1
2
3
4
5
6
7
8                        UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    CARLOS JESUS COLINA-MEIRA,              No. 1:25-cv-1716 CSK P

12              Petitioner,
                                              ORDER
13         v.

14    TODD LYONS, et al.,

15              Respondents.

16

17    **I.  INTRODUCTION**

18         Petitioner, an asylum seeker from Venezuela who entered the United States on or around

19    September 29, 2022, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1]

20    Petitioner is represented by pro bono counsel.  Petitioner was initially detained by immigration

21    officials and released on parole on October 3, 2022.  On October 7, 2025, petitioner reported to

22    U.S. Customs Enforcement ("ICE") in Los Angeles and was re-detained.  This habeas action

23    concerns petitioner's re-detention.  For the following reasons, this Court grants the petition and

24    orders petitioner released immediately.

25    **II.  PROCEDURAL BACKGROUND**

26         On December 2, 2025, petitioner filed his petition for writ of habeas corpus.  (ECF No. 1.)

27    ─────────────────────
      [1]  The parties consented to the jurisdiction of the United States Magistrate Judge pursuant to
28    28 U.S.C. § 636(c)(1).  (ECF No. 11.)

                                                  1

On December 3, 2025, petitioner filed a motion for a temporary restraining order.  (ECF No. 3.)

On December 4, 2025, the Honorable Dena M. Coggins denied petitioner's motion for a

temporary restraining order without prejudice where petitioner was detained on October 7, 2025,

but did not explain in his motion why he did not seek injunctive relief sooner.  (ECF No. 4.)  On

December 5, 2025, this Court directed respondents to file a response to the petition within

fourteen days and ordered that petitioner may file a reply within fourteen days after being served

with the response.  (ECF No. 6.)

On December 9, 2025, this action was reassigned to this Court after the parties consented

to the jurisdiction of the magistrate judge.  (ECF No. 11.)

On December 19, 2025, respondents timely filed a response to the petition.  (ECF No. 12.)

On December 23, 2025, petitioner timely filed a reply to the response.  (ECF No. 13.)

In response to the Court's order (ECF No. 14), on December 29, 2025, respondents filed a

supplemental response with additional documents.  (ECF No. 15.)  On December 30, 2025,

petitioner filed a sur-reply.  (ECF No. 16.)  Briefing is now complete.

**III.  FACTUAL BACKGROUND**

Petitioner is a native and citizen of Venezuela who claims to have entered the United

States on or around September 29, 2022 near El Paso, Texas.  (ECF No. 12 at 14, 31.)  Petitioner

entered or was present without inspection and he did not possess or present a valid immigrant visa

or other valid entry document.  (Id. at 9, 31.)  On October 3, 2022, petitioner was paroled into the

United States pursuant to Immigration and Nationality Act ("INA") § 212(d)(5) due to detention

capacity.  (Id. at 11, 15, 31.)  According to the declaration of the ICE Officer submitted by

respondents, on September 6, 2023, petitioner filed an affirmative asylum application (form I-

589), which was subsequently transferred to the Immigration Court, docketed, and a Notice to

Appear was filed.  (Id. at 31.)

On October 7, 2025, petitioner reported to the Los Angeles ICE Field Office where he was

detained.  (Id. at 31, 17-19.)  On October 7, 2025, a Notice to Appear was issued charging

petitioner with INA § 212(a)(7)(A)(i)(1), not being in possession of a valid unexpired immigrant

visa or other valid entry document at the time of application of admission, and

1   INA § 212(a)(6)(A)(i), an alien present in the United States without being admitted or paroled,

2   who arrived in the United States at any time or place other than designated by the Attorney

3   General.  (Id. at 6, 32.)  On October 25, 2025, an I-830 was filed, reflecting petitioner's transfer to

4   California City ICE Processing Center.  (Id. at 21, 32.)  Petitioner was scheduled for a video

5   hearing before an Immigration Judge in Adelanto, California for December 16, 2025.  (Id. at 23,

6   32.)  A video hearing before an Immigration Judge in Adelanto has been scheduled for February

7   6, 2026.  (Id. at 32, 28.)

8   **IV.  LEGAL STANDARD**

9         The Constitution guarantees the availability of the writ of habeas corpus "to every

10  individual detained within the United States."  Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004)

11  (citing U.S. Const., Art I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in

12  custody upon the legality of that custody, and ... the traditional function of the writ is to secure

13  release from illegal custody."  Preiser v. Rodriguez, 411 U.S. 475, 484 (1973).  A writ of habeas

14  corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the

15  Constitution or federal law.  28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has

16  served as a means of reviewing the legality of Executive detention, and it is in that context that its

17  protections have been strongest."  I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001).  A district court's

18  habeas jurisdiction includes challenges to immigration detention.  See Zadvydas v. Davis, 533

19  U.S. 678, 687 (2001).

20  **V.  DISCUSSION**

21        The petition, filed on a habeas corpus petition form, raises two claims for relief.  In claim

22  one, petitioner argues that he is being detained in violation of his right to due process under the

23  Fifth Amendment. (ECF No. 1 at 6.)  Petitioner contends that after he entered the United States

24  in 2022, he was released on parole.  (Id. at 6.)  Petitioner contends that following his re-detention

25  on October 7, 2025, he was not afforded a pre-deprivation hearing prior to being detained in

26  violation of his right to due process.  (Id.)  Petitioner contends that his prior release meant that the

27  government found petitioner not to be a danger or a flight risk.  (Id.)  In claim two, petitioner

28  argues that the July 8, 2025 DHS guidance classifies petitioner as being bond ineligible under

1    INA 235 and thus subject to mandatory detention.  (Id.)  Petitioner contends that he is bond

2    eligible under the pre-July 8, 2025 DHS guidance contained under INA 236.  (Id.)  Petitioner's

3    claims are more thoroughly briefed in petitioner's motion for a temporary restraining order.  (ECF

4    No. 3.)

5         In response, respondents argue that petitioner is detained as an applicant for admission

6    under 8 U.S.C. § 1225(b)(2)(A) and is not entitled to a bond hearing.  (ECF No. 12 at 2-3.)

7    Respondents further argue that there is insufficient evidence that petitioner would be classified

8    under Section 236 of the Act.  (Id. at 3.)

9         **A.  Statutory Claim (Claim Two)**

10             1.  Statutory Background

11        8 U.S.C. § 1225(b)(2) mandates detention during removal proceedings for applicants

12   "seeking admission" and does not provide for a bond hearing.  8 U.S.C. § 1226(a) "provides the

13   general process for arresting and detaining [noncitizens] who are present in the United States and

14   eligible for removal."  Rodriguez Diaz v. Garland, 53 F.4th 1189, 1196 (9th Cir. 2022).  Under

15   Section 1226(a), the Government has broad discretion whether to release or detain the individual.

16   See id.  Section 1226(a) provides several layers of review for an initial custody determination and

17   it confers "an initial bond hearing before a neutral decisionmaker, the opportunity to be

18   represented by counsel and to present evidence, the right to appeal, and the right to seek a new

19   hearing when circumstances materially change."  Id. at 1202.

20        In July 2025, DHS issued a memorandum changing its policy regarding application of

21   Sections 1225 and 1226:

22        [A] U.S. Customs and Border Protection Memorandum was issued titled
          "Detention     of     Applicants     for     Admission."     See
23        https://www.cbp.gov/document/foia-record/detention-applicants-
          admission. The Memorandum indicated that DHS, in coordination with the
24        DOJ, "revisited its legal position" on the INA and determined that § 1225,
          rather than § 1226, is the applicable immigration authority for an "applicant
25        for admission" including an alien present in the U.S. "who has not been
          admitted ... whether or not at a designated port of arrival." Id. It stated that
26        "it is the position of DHS that applicants for admission are subject to
          mandatory detention under INA § 235(b) and may not be released from DHS
27        custody except by INA § 212(d)(5) parole." Id. The Memorandum further
          provides that for custody purposes, "these aliens are now treated in the same
28        manner that 'arriving aliens' have historically been treated. The only aliens

                                          4

1
2
3
    eligible for a custody determination and release on recognizance, bond, or condition parole under INA § 236(a) are aliens admitted to the United States and chargeable with deportability under INA § 237, with the exception of those subject to mandatory detention under INA § 236(c)." Id.

4
Pacham v. Archambeault, 2025 WL 3653984, at *6 (S.D. Cal. Dec. 17, 2025).

5
6
7
    Until DHS changed its policy in July 2025, the Government consistently applied Section 1226(a), not Section 1225(b)(2), to noncitizens residing in the United States who were detained by immigration authorities and subject to removal.  See Rodriguez Diaz, 53 F.4th at 1196.

8
    2.  Analysis

9
10
11
12
    Petitioner contends that he is not "seeking admission" and should be subject to Section 1226(a) consistent with DHS's former practice and, thus, he is entitled to a bond hearing. Respondents argue that section 1225(b)(2) is the correct authority for petitioner's detention which does not entitle him to a hearing.

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
    This Court agrees with and joins the majority of courts nationwide, including the Eastern District of California, in rejecting respondents' interpretation of Sections 1225 and 1226.  See Rodriguez Vazquez v. Bostock, 2025 WL 2782499, at *1, 21-22 (W.D. Wash. Sept. 30, 2025) (concluding, after a thorough analysis, that "the government's [interpretation of § 1225] belies the statutory text of the INA, canons of statutory interpretation, legislative history, and longstanding agency practice"); J.Y.L.C. v. Bostock, 2025 WL 3169865, at *2 (D. Or. Nov. 12, 2025) (collecting more than thirty cases rejecting the government's assertion that § 1225 empowers the DHS to arrest and hold a noncitizen present without legal status who has spent years in the U.S.); Cardona-Lozano v Noem, 2025 WL 3218244, at *6 (W.D. Tex. Nov. 14, 2025) ("Repeatedly, [district courts across the country] have found that DHS and the [Board of Immigration Appeals'] construction of the INA is incorrect and that petitioners who have long resided in the United States but are being held under § 1225 are entitled to relief.") (collecting cases); Faizyan v. Casey, 2025 WL 3208844, at *5 (S.D. Cal. Nov. 17, 2025) (holding that § 1226 applies to a petitioner who "DHS has consistently treated" as subject to discretionary detention and "who has been residing in the United States for two years" (internal quotation marks and citation omitted)); Josue I.C.A. v. Lyons, 2025 WL 3496432, at *3 n.6 (E.D. Cal. Dec. 5, 2025) (collecting cases);

1  Morales-Flores v. Lyons, 2025 WL 3552841, at *3 (E.D. Cal. Dec. 11, 2025) (collecting cases)

2  ("Courts nationwide, including this one, have overwhelmingly rejected respondents' arguments

3  and found DHS's new policy unlawful.").

4       "These courts examined the text, structure, agency application, and legislative history of

5  1225(b)(2) and concluded that it applies only to noncitizens 'seeking admission,' a category that

6  does not include noncitizens like [Petitioner], living in the interior of the country." Salcedo

7  Aceros v. Kaiser, 2025 WL 2637503, at *8 (N.D. Cal. Sept. 12, 2025) (collecting cases).  By

8  contrast, "[t]he government's proposed reading of the statute (1) disregards the plain meaning of

9  section 1225(b)(2)(A); (2) disregards the relationship between sections 1225 and 1226; (3) would

10  render a recent amendment to section 1226(c) superfluous; and (4) is inconsistent with decades of

11  prior statutory interpretation and practice." Guerro Lepe v. Andrews, 2025 WL 2716910, at *4

12  (E.D. Cal. Sept. 23, 2025) (collecting cases).  This Court incorporates and adopts the thorough

13  and persuasive reasoning of the district court in Lepe, 2025 WL 2716910, at *3-9.  As the district

14  court found in Lepe, this Court rejects the government's contention that petitioner is an "applicant

15  for admission" subject to § 1225(b)(2) (ECF No. 12 at 2-3), and finds that petitioner is detained

16  under 8 U.S.C. § 1226(a) and its implementing regulations because petitioner has resided in this

17  country for 3 years since October 3, 2022, when petitioner was released into the United States on

18  parole, until petitioner was arrested and detained on October 7, 2025 after he reported to ICE.

19  Petitioner's re-detention on October 7, 2025 was not upon petitioner's arrival to the United States.

20       **B. Due Process Claim (Claim One)**

21       Petitioner argues that his detention violates his right to due process.  Respondents argue

22  that petitioner does not have a procedural due process right to a bond hearing because § 1225(b)

23  does not provide for a bond hearing.

24       The Due Process Clause protects persons in the United States from being deprived of life,

25  liberty, or property without due process of law.  U.S. Const. amend. V.  "It is clear that

26  commitment for any purpose constitutes a significant deprivation of liberty that requires due

27  process protection." Foucha v. Louisiana, 504 U.S. 71, 80 (1992).  "[T]he Due Process Clause

28  applies to all 'persons' within the United States, including aliens, whether their presence here is

1    lawful, unlawful, temporary, or permanent." Zadvydas, 533 U.S. at 693.

2        The Court analyzes petitioner's due process claim "in two steps: the first asks whether

3    there exists a protected liberty interest under the Due Process Clause, and the second examines

4    the procedures necessary to ensure any deprivation of that protected liberty interest accords with

5    the Constitution." Garcia v. Andrews, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing

6    Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989)).

7        "The Due Process clause applies to noncitizens in this country in connection with removal

8    proceedings, even if their presence is unlawful or temporary." Tinoco v. Noem, 2025 WL

9    3567862, at *5 (E.D. Cal. Dec. 14, 2025) (citing Zadvydas, 533 U.S. at 690).

10        The Supreme Court has found that a protected liberty interest may arise from a conditional

11   release from physical restraint. Young v. Harper, 520 U.S. 143, 147-49 (1997). Even when a

12   statute allows the government to arrest and detain an individual, a protected liberty interest under

13   the Due Process Clause may entitle the individual to procedural protections not found in the

14   statute. See id. (finding due process requires pre-deprivation hearing before revocation of

15   preparole); Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973) (same, in probation context);

16   Morrissey v. Brewer, 408 U.S. 471, 482 (1972) (same, in parole context). To determine whether

17   a specific conditional release rises to the level of a protected liberty interest, "[c]ourts have

18   resolved the issue by comparing the specific conditional release in the case before them with the

19   liberty interest in parole as characterized by Morrissey." Gonzalez-Fuentes v. Molina, 607 F.3d

20   864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).

21       In Morrissey, the Supreme Court explained that parole "enables [the parolee] to do a wide

22   range of things open to persons" who have never been in custody or convicted of any crime,

23   including to live at home, work, and "be with family and friends and to form the other enduring

24   attachments of normal life." Morrissey, 408 U.S. at 482. "Though the [government] properly

25   subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring,

26   his "condition is very different from that of confinement in a prison." Id. "The parolee has relied

27   on at least an implicit promise that parole will be revoked only if he fails to live up to the parole

28   conditions." Id. The revocation of parole undoubtedly "inflicts a grievous loss on the parolee."

7

1    Id. (quotations omitted).  Therefore, a parolee possesses a protected interest in her "continued

2    liberty."  Id. at 481-84.

3            Here, petitioner was initially detained upon his arrival, then paroled into the United States

4    on October 3, 2022 and released.  As this district court recently explained, this Court agrees that

5    noncitizens paroled into the United States have a liberty interest in their continued release:

6                    Many district courts in the Ninth Circuit have found that non-citizens
               paroled into the United States pursuant to § 1182(d)(5) have a liberty
7               interest in their continued release, entitling them to certain due
               process protections, the extent of which are determined by applying
8               the test provided in Mathews v. Eldridge, 424 U.S. 319, 335 (1976).
               See e.g. Omer G. G. v. Kaiser, No. 1:25-cv-01471-KES-SAB (HC),
9               2025 WL 3254999, at *5, 9 (E.D. Cal. Nov. 22, 2025) (determining
               that the petitioner was entitled to a post-deprivation bond hearing
10              after he was initially released pursuant to § 1182(d)(5)(A) and later
               re-detained); Salazar v. Casey, No. 25-cv-02784-JLS-VET, 2025
11              WL 3063629, at *4, 6 (S.D. Cal. Nov. 3, 2025) (ordering the
               petitioner released from custody subject to the conditions of her
12              preexisting parole under § 1182(d)(5)(A), and requiring notice and a
               hearing prior to her re-detention); Noori, 2025 WL 2800149, at *9–
13              10, 14 (enjoining re-detention of the petitioner during the pendency
               of his removal proceedings without leave of the court, when the
14              petitioner was previously released on humanitarian parole pursuant
               to § 1182(d)(5)(A)); Rodriguez Cabrera v. Mattos, No. 2:25-cv-
15              01551-RFB-EJY, 2025 WL 3072687, at *9–11, 14 (D. Nev. Nov. 3,
               2025) (ordering the petitioner's immediate release following re-
16              detention     when     he    was     initially    released    pursuant    to
               § 1182(d)(5)(A)). The court agrees with the conclusions reached in
17              the cited cases and finds that petitioner is likely to demonstrate that
               he has a liberty interest in his continued release. The court proceeds
18              to consider whether due process requires written notice and a pre-
               detention hearing before a neutral adjudicator.
19

20   Chavarria v. Chestnut, 2025 WL 3533606, at *3 (E.D. Cal. Dec. 9, 2025); see also Castellon v.

21   Kaiser, 2025 WL 2373425, at *5 (E.D. Cal. Aug. 14, 2025) (case-by-case analysis required as to

22   the decision to revoke parole); Y-Z-H-L v Bostock, 2025 WL 1898025, at *10-12 (D. Or. July 9,

23   2025).  This Court concludes that petitioner has a protected liberty interest in his release.  See

24   Chavarria, 2025 WL 3533606, at *3; Castellon, 2025 WL 2373425, at *5; Guillermo M. R. v.

25   Kaiser, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest

26   that arises upon release [from immigration detention] is inherent in the Due Process Clause"); Y-

27   Z-H-L, 2025 WL 1898025, at *10-12; Ortega v. Kaiser, 2025 WL 1771438, at *3 (N.D. Cal. June

28   26, 2025) (collecting cases finding that noncitizens who have been released have a strong liberty

8

1    interest); F.M.V. v. Wofford, 2025 WL 3083934, at *4-5 (E.D. Cal. Nov. 4, 2025).

2         Next, the Court turns to what procedures are necessary to ensure that the deprivation of

3    that protected liberty interest meets the demands of the Constitution.  The Ninth Circuit has

4    "regularly applied Mathews [v. Eldridge, 424 U.S. 319 (1976)], to due process challenges to

5    removal proceedings."  Rodriguez Diaz, 53 F.4th at 1206; see also Hernandez v. Sessions, 872

6    F.3d 976, 993 (2017) (applying Mathews factors in immigration detention context).  In applying

7    the Mathews test to a procedural due process claim for detention under 8 U.S.C. § 1226, the Ninth

8    Circuit explained that "Mathews remains a flexible test that can and must account for the

9    heightened governmental interest in the immigration detention context."  Rodriguez Diaz, 53 F.

10   4th at 1206-07 (citations omitted).  Under Mathews, the court considers three factors: (1) the

11   private interest affected; (2) the risk of an erroneous deprivation; and (3) the government's

12   interest.  Mathews, 424 U.S. at 335.

13        First, petitioner has a private interest in remaining free from detention.  "Freedom from

14   imprisonment -- from government custody, detention, or other forms of physical restraint -- lies at

15   the heart of the liberty that [the Due Process] Clause protects."  Zadvydas, 533 U.S. at 690 (citing

16   Foucha, 504 U.S. at 80 ("Freedom from bodily restraint has always been at the core of the liberty

17   protected by the Due Process Clause.")); Hernandez, 872 F.3d at 981 ("[T]he government's

18   discretion to incarcerate non-citizens is always constrained by the requirements of due process.").

19   For three years petitioner was free from custody before his re-detention.  Respondents make no

20   claim that petitioner failed to comply with the ICE monitoring requirements or violated any

21   condition of release.

22        Next, the Court turns to the second Mathews factor, the risk of erroneous deprivation to

23   petitioner, and finds this factor weighs in petitioner's favor.  "[T]he risk of erroneous deprivation

24   is high when, as here, parole is revoked without written notice or reason."  Chavarria, 2025 WL

25   3533606, at *3; see also A.E. v. Andrews, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025)

26   ("The risk of an erroneous deprivation [of liberty] is high" when "[the petitioner] has not received

27   any bond or custody redetermination hearing.").  Civil immigration detention, which is

28   "nonpunitive in purpose and effect[,]" is typically justified under the Due Process Clause only

1  when a noncitizen presents a risk of flight or danger to the community.  See Zadvydas, 533 U.S.

2  at 690; Padilla v. ICE, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023).  Respondents do not

3  contend that petitioner is or was a flight risk or a danger to the community.  "Where, as here, '[the

4  petitioner] has not received any bond or custody ... hearing,' 'the risk of an erroneous deprivation

5  [of liberty] is high' because neither the government nor [petitioner] has had an opportunity to

6  determine whether there is any valid basis for her detention."  Pinchi v. Noem, 792 F. Supp. 3d

7  1025, 1035 (N.D. Cal. 2025) (quoting Singh v. Andrews, 2025 WL 1918679, at *7 (E.D. Cal.

8  July 11, 2025)).

9        Finally, with regard to the third Mathews factor, this Court recognizes that the government

10  has an interest in enforcing immigration laws, but respondents' interest in detaining petitioner

11  without notice and without a hearing is "low."  See Ortega v. Bonnar, 415 F. Supp. 3d at 970;

12  Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. March 3, 2025).  Detention hearings in

13  immigration courts are routine, and impose a "minimal cost."  Doe, 787 F. Supp. 3d at 1094.

14  Even if respondents believed they had a proper reason to detain petitioner, such decision on their

15  part would warrant written notice and a pre-detention hearing rather than automatic detention.

16  "That the Government may believe it has a valid reason to detain petitioner does not eliminate its

17  obligation to effectuate the detention in a manner that comports with due process."  E.A. T.-B. v.

18  Wamsley, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025).  In addition, here, the government's

19  interest is even lower because petitioner was previously released after immigration officials

20  determined he was not a flight risk or danger to the community, there is no evidence that he has a

21  criminal record, and he has complied with all conditions of release.[2]  See Pinchi, 2025 WL

22  1853763, at *2 (N.D. Cal. July 4, 2025).

23        Overall, balancing these factors, this Court finds that the Mathews factors weigh in favor

24  of finding petitioner is entitled to notice and a bond hearing, and petitioner should have been

25  provided such notice and a hearing before he was re-detained.  "An essential principle of due

26  process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for

27

28  [2]  Respondents do not contend that petitioner violated any conditions of his release.  (See ECF Nos. 12, 15.)

hearing appropriate to the nature of the case." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) (internal quotation marks and citation omitted) (emphasis added).  In criminal cases, parolees released on parole, which does not provide "absolute liberty," but rather "conditional liberty properly dependent on observance of special parole restrictions," are also entitled to due process, including a predeprivation hearing before their parole can be revoked. Morrissey, 408 U.S. at 480-86.  "Numerous district courts have held that these principles extend to the context of immigration detention." F.M.V., 2025 WL 3083934 at *6 (collecting cases). Respondents identify no reason why written notice was not provided as required by their own regulations or why a pre-deprivation hearing could not be held, and provided no evidence of "urgent concerns," thus, "a pre-deprivation hearing is required to satisfy due process." Guillermo M. R. v. Kaiser, 791 F. Supp. 3d 1021, 1036 (N.D. Cal. 2025).  Accordingly, the Court finds that petitioner is entitled to relief as to his due process claim.

## VI.  CONCLUSION

Accordingly, IT IS HEREBY ORDERED that:

1.  The petition for writ of habeas corpus is granted; and

2.  Respondents are ordered to release petitioner immediately.  Respondents are ENJOINED AND RESTRAINED from re-detaining petitioner unless they provide petitioner with written notice before a pre-deprivation bond hearing and demonstrate, by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker, that petitioner is a flight risk or danger to the community such that his physical custody is legally justified.

3.  Within seven days of the date of this order, the parties shall file a joint status report addressing petitioner's status.

Dated:  December 31, 2025

_____
CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

Meir1716.157/2

11